May it please the Court, my name is Daniel Craig. I represent the appellant in this matter, Beverly Mentor. At this time I would like to reserve two minutes for rebuttal. Thank you. The fundamental error in this case is the lower court's failure to appoint counsel to Ms. Mentor. That issue manifests itself in several sub-issues before the Court today. Namely, whether or not the clerk of the District Court violated Ms. Mentor's due process rights by improperly providing her with a form complaint, in doing so framing her issue as a Title VII claim. Can I ask at the outset, what is the standard that the District Court should apply in terms of assessing whether counsel ought to be appointed? Is it our Tavron case, or is it actually Title VII itself? Well, both Title VII. Title VII does provide for the appointment in counsel when the presiding judge deems just, when the court deems just. But at the same time, Tavron provides that a pro se plaintiff, that a court has discretion to provide a pro se plaintiff with counsel under Section 1915. So, what factors under the Tavron v. Gray standard did the District Court get wrong? The District Court did not analyze any of the factors besides the threshold matter of whether or not the plaintiff has presented a claim of merit. The Court summarily denied the plaintiff's motion for appointment of counsel after it determined that it was going to grant the defendant's motion for summary judgment, saying, as this Court has determined that there are no issues of fact or law, therefore this claim has no merit and the plaintiff has failed to meet the threshold matter. However, I submit that it's counterintuitive to look to whether or not the pro se plaintiff, in her attempt at lawyering her own claim, has sufficiently developed a record on which to satisfy summary judgment when determining whether or not the court will appoint counsel for that pro se plaintiff. I don't follow why it's counterintuitive. I mean, the facts are the facts. You're not contesting the Title VII ruling. Well, we are contesting the Title VII ruling to the extent that the Court found that she did not make a sufficient showing to meet the threshold standard of the Tavron analysis. To expect a pro se plaintiff to navigate the rules of discovery and then determine whether or not counsel should have been appointed. You're suggesting that in every pro se case, counsel should be appointed. I mean, how many pro se cases will you receive? I'm suggesting that by waiting until discovery has concluded, in issuing a decision on whether or not to appoint counsel, that my client was put at a substantial disadvantage. Typically, the decision of whether an appointment of counsel will be made occurs prior to discovery because a lawyer is required to, in most cases, to navigate the rules of discovery. However, because the Court waited until it had a record in front of it to rule on the claim, it should have, one, looked at the evidence. It should have looked at the record as a whole in determining the claims, the existence of any claim of merit. But it shouldn't have held the insufficiency of evidence that the pro se plaintiff was able to elicit through the discovery process against her in determining whether or not it should appoint counsel, whether or not she had stated a claim of merit. This case is very similar to the case of Parham v. Johnson, where the Third Circuit remanded the case to the District Court with order to appoint counsel because the plaintiff in that case who was arguing that a doctor had prescribed medication, ear medication for the plaintiff improperly and causing him to suffer hearing loss. And he went through a trial, but he was incapable of overcoming hearsay objections or getting anything on the record. And therefore, he had a very good claim of merit, but because of his inability to navigate the evidentiary system and the discovery system. Now, how does that case compare to Ms. Mentor's case? Ms. Mentor was a pretty active litigator on her own behalf, was she not? I mean, she filed a complaint. She amended the complaint. She served in extensive interrogatories, if I recall correctly. Didn't she demonstrate that she was fairly able in terms of navigating the legal process, at least early on? I would submit that she demonstrated that she was capable of reading the black letter rules of evidence and attempting to. I'm not talking about whether or not she could read. I'm talking about what she actively did. And I submit that at any time there was a roadblock, she was completely incapable of overcoming it. When opposing counsel resisted her interrogatories, she appealed to the court for assistance and was denied. And with the assistance of a lawyer, she could have determined another way to, when exceeding her given interrogatory, she could have determined another manner in which to elucidate the evidence that she was seeking besides simply serving interrogatories, as an example. You fault the clerk of court for sending a Title VII pro se form or discrimination pro se form. What's the record on that particular issue? What factual basis do we have to say that the clerk of court made a specific decision in this case to send out that particular form? By inference, the fact that the right to sue letter came from the EEOC, which typically deals heavily with race discrimination claims, and coupled with the fact that Ms. Mentor stated to the EEOC and in her deposition testimony that she felt the reason for which she was discriminated against was because she spoke up for the rights of her daughter. But what information did the clerk of court have? You're faulting the clerk for sending out that form. I'm trying to think how can we determine that the clerk violated due process rights here. And I submit that we have an insufficiently developed record, but through the inference that she made, she framed the issue based on the EEOC disposition, despite the fact that Ms. Mentor was very well aware that it was what she was saying. It was her speech. And she did believe that there was a racial component to how her speech was met by the co-principals of the school. But she really did believe that the thrust of why she received retaliation from the school was because of her speech. Could I ask you to move to the merits? So why were the legitimate non-discriminatory reasons for race discrimination not – why were they pretext? Well, for example, let's look to – they claimed that Ms. Mentor, for example, her son attended field day. We'll take that as an example. The case of Holder versus City of Allentown, the Third Circuit held that on the basis of an unjustifiable standard, such as the exercise of a fundamental right or such as race, public officials engage in unconstitutional discriminatory application or administration of a facially impartial law when they seek to enforce the law on the basis of that unjustifiable standard. The record indicates that it was tradition for high school students to come and assist with the elementary students' field day. Ms. Mentor stated that she – there were several students, high school students there, and she did not believe that each one had a note or had permission to be present at that field day. Mr. Craig, before we even get to pretext, the district court here actually determined in the first instance that the plaintiff had not made out a prima facie case, didn't he? He then alternatively went on to discuss the articulation of non-discriminatory reasons. But did the district court get that right? I mean, was there no prima facie case even demonstrated? In the context of a motion for summary judgment, they may have gotten it right. I'm sorry, the court repeatedly referred to the insufficiency of evidence to back up any of Ms. Mentor's claims and that they were just bald allegations. However, with relation to the first factor, the Tavron analysis, there's no – weight should not be given to the evidence that she was able to present to bring this claim. Typically – Let's put aside Tavron. For purposes of the prima facie case, there's usually a fairly low threshold that needs to be met, and the district court here said that summary judgment is appropriate because plaintiff fails to make a prima facie showing of an inference of discrimination. You don't agree with that, do you? With the court's opinion? Yes. No, I do not. Ms. Mentor stated that other individuals had made similar complaints to the co-principals and were not rebuffed in the manner that she was. One of those individuals was not a protective class. One was of a different race and who was also an employee of the Board of Education. She also was transferred from a school that was staffed and attended primarily by Caucasian individuals to a school that was primarily African American and a school that was already fully staffed and did not need any additional teacher aids. It appears from the record that this was an attempt to remove Ms. Mentor from the Board of Education's employ without bringing about the appearance of impropriety, which Ms. Mentor in all of her court filings adamantly states that this is, for lack of a better word, a conspiracy by a few individuals who were dead set on removing her from the employ of the Board of Education for her adamant speech about the harassment that her daughter was met with and for asserting, and because that treatment was, she experienced differential treatment than other non-African Americans who made similar complaints. Moving on, as far as the First Amendment complaint is concerned. Actually, at this point your time has expired, but I'll have you back on rebuttal. Thank you. Mr. Craig, thank you. Mr. Kowalik? Good morning, Your Honors. May it please the Court, my name is Walter Kowalik. I'm with Marshall, Dennehy, Warner, Coleman, and Goggin on behalf of the defendants. I'd like to start off to talk about the request for counsel argument. Counsel, I'm sorry. Mr. Craig. Mr. Craig mentioned both Title VII and the First Amendment claims, but the brief that they filed was limited to the First Amendment claims, and I think that there's significant and substantial Third Circuit case law that holds that if you don't raise it in the first brief, you've waived it. And so basically what we have to do with regard to the request for counsel, we have to look at the First Amendment claim only. They've waived the Title VII portion of it. With regard to the First Amendment issue, what we have here was private speech. It wasn't protected. The first of the problems of the Tavron test asked whether it's protected speech. In this case, it wasn't. It wasn't as if she was making a statement about an area of public concern, but rather she was addressing an individual concern that she had. Now, can you make an argument? Can you generalize it to the point where it would appear to be of general concern? Of course. Anything that affects any one person, if you generalize it far enough, would be a matter of public concern. What you have to look at was exactly what occurred here. What occurred here was that her daughter had a dispute with another student, and that's what she was addressing, a purely personal matter, not protected under the Tavron test. However, even if we considered it to meet that public requirement, here then the next step is to do the balancing test, and here it wasn't so much necessarily that she had made some speech about bullying, but it was the things afterwards where she had the confrontation with the other parent and where she had discussions with Ms. Conway, and she made apparently disparaging remarks about this other parent. So it wasn't specifically just the fact that there was even a speech made here, but it was everything to do with both the speech part of it and the after-speech effects, the interaction and the conflicts that she had with the parent. That was the driving force for the Board's actions here. In my brief, I point out that there wasn't also any causal link, and that there were legitimate reasons for the things that were taken. Basically, because the plaintiff didn't raise the First Amendment claim before the district court judge, I don't think that you can find an abuse of discretion on that issue. With regard to the due process claim, I think Judge Vinesky, you hit the nail right on the head. There is no factual record to substantiate this argument. I think it's a very creative argument, frankly, but there's just simply no factual support for it. We don't know where she got this form complaint. We don't know what she told the clerk. She may have just said, look, I got this EEOC letter. I need to file a cause of action based on my racial discrimination claim. And that's what the clerk gave her. So without some sort of factual record to support it, the argument really can't go anywhere. With regard to the racial discrimination and the underlying matters, for the most part, I think that Judge Kavanaugh got it absolutely right. Well, it's a low threshold to establish a prima facie case, right? It is, but, I mean, the fundamental thing you have to do is have adverse employment action. You know, getting reprimanded, having a letter put in your file, those sort of things. You know, that's not adverse employment action. Well, she was terminated. Well, what I was going to say is the way I look at this case, there was two distinct things here. There was this whole series of things that were clearly not adverse employment actions. The reprimand, even the transfer to the other school. She kept her position, same rate of pay and so forth. The only two things that I thought that she had even reached a position with. Reduction of hours and termination. Exactly. And with regard to both of them, I think that we clearly established the legitimate, non-discriminatory reasons for them, as I detailed in my brief. With regard to, you know, the other employees that she pointed to as having been treated differently, I think that the real key. Are they comparable? I'm sorry? Are they comparable employees to be compared, you know? One is comparable, one was an employee, the other one was not. But the thing that is is that what she clearly didn't do here is establish that the situations that those two other parties faced were the same as what she faced here. Basically, all she says was. So she did not come forward with any comparators that were even close. Exactly. She had two parents who had essentially bullying complaints and that were dealt with with the school. And this is actually exactly what happened here. She went in and she said, my daughter is being bullied. Can you fix it? And they said, well, here's what we can do. And they took the steps. They had the children separated in class. They had the other child watched in recess periods. They gave her the option of moving her daughter to another class, which was unacceptable to her. Okay, well, so the situation was resolved for her. These other two parents, they were resolved with them. She basically said that they were happy. She didn't understand. She didn't really know what had happened, how they were resolved. For all we know, for all the record shows that the exact same steps were taken with these other parents as were taken with her. The distinction here is that after the fact, she went and confronted the other parent, whereas there is no indication in the record that these other two people that she's talking about confronted anyone, confronted the parents of the bullies. And that's, I think, the real distinction here. She could point to other people who had children who were bullied, but that's not a valid apple-to-apple comparison because of these additional factors. Finally, the only other point that I would want to make is the plaintiff argued that the inherent supervisory authority of this court should be exercised. And I think that clearly that's a very, very limited doctrine to deal with issues only and not causative action. And clearly the First Amendment claim here is an additional point of reference. Unless Your Honor has any other questions for me. Thank you all. Thanks for my presentation. Thanks very much. Thank you. Mr. Craig, you may have rebuttal. Your Honors, I just have a few points on rebuttal. First, the Title VII claim was not waived. We addressed the Title VII claim beginning on page 22 of our brief. Moreover, the- Did you address the Title VII claim in the context of the court's decision not to appoint counsel? Not specifically, not a full specific section on it, no. But I do believe that we mentioned the sufficiency of the Title VII claim briefly. All right. Thank you. Moreover, with regard to whether or not the speech was of public concern, this case is very analogous to the case of Holder v. City of New Allentown, where an employee of the Board of Education wrote a letter regarding the residency requirements of employees of the Board of Education. And three days later, there was an investigation into his residency, and the Third Circuit held that that was public speech, even though it was based on him as an individual. It individually affected him, just as bullying here is a matter of public concern, despite the fact that it was in the context of an individual concern of Ms. Mentor. Ms. Mentor did have comparators in regards to the Title VII claim. She states in her deposition testimony that there was- that the other parents had their complaints adequately addressed and were given the opportunity to express their complaints until they felt satisfied with the outcome. Finally, the District Court never even addressed the impairment of speech claim. They, however, did scour the record to determine the basis of Ms. Mentor's retaliation claim and only came up with two incidents that occurred subsequent to the adverse employment action, when on the face of the record, the First Amendment, the speech for which she was retaliated against, did occur prior to the adverse employment action. So in scouring the record to determine the nature of that claim, the Court abused- the Court failed to see the only claim that that retaliation could have been based upon. Thank you, Mr. Chairman. We thank both counsel for their helpful arguments, and the Court particularly thanks the Duquesne School of Law.